PER CURIAM.
Karl Alan Finley appeals the judgment and sentence imposed after a jury found him guilty of being a felon in possession of a firearm or ammunition. He argues that the trial court erred in denying his motion for judgment of acquittal because the State failed to provide sufficient evidence to deny the motion. We agree.
Police responded to Finley’s apartment in response to a reported burglary. Finley’s downstairs neighbor called the police when he heard someone walking in Finley’s apartment, and then saw a man, whom he did not recognize, carrying items and dropping change in the parking lot.
Officer M. responded to the call. While on his way to Finley’s apartment, Officer M. saw the suspect’s vehicle and pulled him over. Officer M. left the suspect with other responding officers and proceeded to Finley’s apartment. Finley’s neighbor identified the suspect as the person he saw leaving Finley’s apartment.
Once Officer M. arrived at Finley’s apartment, he was immediately hit with the strong odor of bleach. Finley’s apartment had been “ransacked,” and bleach had been poured all over the apartment. While investigating Finley’s home, Officer M. found a handgun lying on a box spring left exposed by an overturned mattress.[1]
Investigators dusted and swabbed the handgun, and the magazine contained within the handgun, for fingerprints and DNA. No fingerprints were found. However, the DNA taken from the handgun and magazine matched Finley’s DNA.
At trial, the investigator who collected Finley’s DNA testified that when she was collecting the DNA from the handgun and magazine, she used two cotton swabs to swab multiple portions of the handgun and the magazine.
A member of the West Palm Beach Police Department’s forensic biology unit also testified. She stated that Finley’s DNA was the only sample she tested against the DNA found on the handgun and weapon (she did not test the sample against the burglary suspect’s DNA), but that there was the presence of a second individual’s DNA found on the handgun. Most notably, when questioned on cross-examination, the forensic witness testified that “secondary transfer” is possible, whereby DNA can be transferred from one object to another, so that a person’s DNA can be detected on both objects without the DNA contributor ever having touched the second object.
At the end of the State’s case-in-chief, Finley moved for a judgment of acquittal, which the trial court denied. The jury found Finley guilty of being a felon in possession of a firearm or ammunition as charged in the information. On appeal, Finley argues that the trial court should have granted his motion for judgment of acquittal because the State did not meet its burden to survive sucli a motion. We agree.
“Appellate review of the denial of a motion for judgment of acquittal is de novo.” Burkell v. State, 992 So.2d 848, 851 (Fla. 4th DCA 2008) (citations omitted). Additionally, when determining whether the *942 State provided enough evidence to survive a motion for judgment of acquittal, the standards are different when the State’s case against a defendant is based on wholly circumstantial evidence, and when the State’s case is based on direct evidence or a mixture of direct and circumstantial evidence. See Boyd v. State, 910 So.2d 167, 180 (Fla.2005) (“[A] special standard of review applies when a case is based wholly on circumstantial evidence.”) (citation omitted). Therefore, we first determine whether the State’s case against Finley was wholly circumstantial.
“Circumstantial evidence is proof of certain facts and circumstances from which the [jury] may infer that the ultimate facts in dispute existed or did not exist.” Horne v. State, 997 So.2d 1262, 1265 (Fla. 4th DCA 2009) (citation omitted) (internal quotation marks omitted). In other words, “[c]ircumstantial evidence is evidence which involves an additional inference to prove a material fact; e.g, ‘I saw A flee the scene.’ ” Charles W. Ehrh-hardt, Florida Evidence (2012 ed.), S. 401.1 at 137. On the other hand, “[d]irect evidence is evidence which requires only the inference that what the witness said is true to prove a material fact; e.g., T saw A shootB.’” Id.
We determine that the State’s case against Finley was wholly circumstantial. The evidence that the State provided was that a handgun was found in Finley’s apartment and that Finley’s DNA was on the handgun and magazine. As for the DNA evidence, the State cites to Van Poyck v. State, 908 So.2d 326, 328 (Fla.2005), and argues that the Florida Supreme Court has classified DNA evidence as direct evidence. Although our supreme court did refer to DNA evidence as direct evidence in Van Poyck, based on other cases handed down by our supreme court, this is not necessarily a bright line rule, and instead, depends on what the DNA testing and evidence is being used to prove. Id.
For example, in Ballard v. State, 923 So.2d 475, 476 (Fla.2006), a Florida Supreme Court case decided one year after Van Poyck, the Court reversed the defendant’s convictions for two counts of first-degree murder and robbery. In Ballard, the only evidence the State presented in support of the defendant’s guilt was the defendant’s fingerprint on a bed frame at the crime scene, and a hair that allegedly matched the DNA profile of the defendant on one of the victims. Id. at 479-80. The Court stated that “this [wa]s a case based upon purely circumstantial evidence.” Id. at 482. This was partially based on the fact “that the State presented no direct evidence of when the hair and fingerprint were left or how they came to be left in their locations.” Id. at 483.
Additionally, in the recent case of Miller v. State, 107 So.3d 498, 499 (Fla. 2d DCA 2013), the Second District reversed a trial court’s denial of the defendant’s motion for judgment of acquittal on the charge of felon in possession of a firearm. The facts in Miller were similar to the facts in the instant case, where a gun was found in the defendant’s apartment underneath a mattress on a box spring. Id. The Second District classified the DNA evidence from the defendant on the gun as “circumstantial” because “the State’s only ordinance of when Miller possessed the gun... is entirely circumstantial.” Id. at 501.
Here, the DNA evidence was used to prove that Finley “possessed” the weapon, either actually or constructively. Similar to Ballard, in the instant case, the State’s witness testified that she could not determine when the DNA was put on the gun. Even more significantly, she testified that secondary DNA transfer was possible; where one object, containing Finley’s DNA, could have rubbed against the hand *943 gun, and without Finley ever having touched the handgun, his DNA could still be present. Since the handgun was found on Finley’s box spring, DNA present on the box spring, or the mattress, before it was overturned, could have transferred onto the handgun and magazine. Therefore, since there are additional inferences needed, that Finley’s DNA was put on the gun by him, and that it was put under the mattress by him, in order to believe that Finley possessed the handgun, the DNA evidence as presented in this case was circumstantial.
“In cases in which the evidence of guilt is wholly circumstantial, it is the trial judge’s task to review the evidence in the light most favorable to the State to determine the presence of competent evidence from which the jury could infer guilt to the exclusion of all other inferences.” Ballard, 923 So.2d at 482 (citation omitted) (internal quotation marks omitted). Therefore “[t]he state is not required to rebut conclusively every possible variation of events which could be inferred from the evidence, but only to introduce competent evidence which is inconsistent with the Defendant’s theory of events.” Kocaker v. State, 119 So.3d 1214, 1225 (Fla.2013) (citation omitted) (internal quotation marks omitted).
Finley’s theory was that it was the burglar, who put the handgun in Finley’s apartment. The State did not present any evidence inconsistent with this theory. It is undisputed that the burglar was in Finley’s home, and was the last person to be in the apartment before Officer M. discovered the handgun. Although there was evidence that Finley’s DNA was on the gun, and the jury was free to reject the DNA transfer theory, in order to survive a motion for judgment of acquittal, the State must present evidence inconsistent with Finley’s reasonable hypothesis of innocence. Since Finley’s reasonable hypothesis involved an explanation for the presence of his DNA on the gun, the State had to provide evidence inconsistent with this theory, something it failed to do. The State did not put the burglar on the stand to deny possession of the gun, and even more, the investigators never even tested the burglar’s DNA to compare to the handgun and magazine, which could have provided evidence that was inconsistent with the burglar ever having touched the handgun. To the contrary, the testimony at trial was that there was the presence of a second contributor of DNA on the handgun; evidence arguably in support of the defense’s theory. The State also did not provide any evidence inconsistent with the theory of secondary transfer of DNA. In fact, the State’s own forensic witness testified in the affirmative, that secondary transfer could have occurred. Additionally, the investigator who took the DNA sample from the handgun and magazine, testified that she used the cotton swabs to rub different portions of the handgun and magazine. Therefore, she could not testify as to the portion of the handgun, and more importantly the magazine, on which the DNA was found. It was therefore consistent with Finley’s theory of innocence that the portion of the magazine that was exposed could have been the portion of the magazine which contained Finley’s DNA because of secondary transfer. There was also no evidence provided as to when or how the DNA evidence became present on the handgun.
Since the State did not provide enough evidence at trial to survive Finley’s motion for judgment of acquittal, we reverse the judgment and sentence and remand with instructions that the trial court enter an *944 order granting Finley’s motion for judgment of acquittal.

Reversed, and Remanded.

STEVENSON, TAYLOR and CONNER, JJ., concur.

. Officer M.'s exact description of where he found the gun was: "[TJhen in the bedroom was a silver and black handgun. I believe it was a Taurus handgun laying on the box springs. The mattress had been flipped over on its side, laying up against the wall and the box springs, the handgun was exposed on the box springs.” (Vol. 5, page 248, lines 5-10).